1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NO  JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STARGAZE MANAGEMENT, LLC,
JAMES DOYLE, JOHN DURAN,

                    Plaintiffs,

          v.

GEORGE SMITH PARTNERS, INC., et al.,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.  CV 15-2755-R

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS

Before the Court is Defendant JP Morgan Chase's ("JPMC") Motion to Dismiss (Dkt. No. 48), Defendant Donald Davis' Motion to Dismiss (Dkt. No. 51), which were filed on May 27, 2015.  Also before the Court is Defendant George Smith Partners' ("GSP") Motion to Dismiss (Dkt. No. 52), which was filed on June 1, 2015.  Having been thoroughly briefed by both parties, this Court took the matter under submission on July 1, 2015.  (Dkt. No. 66).

Concurrent with its opposition, Plaintiffs filed a so-called Second Amended Complaint.

1    (Dkt. No. 56).  Subsequently, JPMC filed a Motion to Dismiss this so-called SAC.  (Dkt. No. 67).

2    Plaintiffs were not given leave to again amend his complaint and did not obtain Defendants'

3    consent to do so as it was required to do.  *See* Fed. R. Civ. P. 15(a)(2).  Such amendment was

4    improper and the so-called SAC is improper and thus not operative.  JPMC's motion to dismiss

5    the so-called SAC is moot.  The Court construes Plaintiffs' request in its opposition and the

6    proposed SAC as a request for leave to amend.

7           The instant case arises out of a failed development deal.  Plaintiffs allege they retained

8    Auslander, Senior Vice President of GSP and M. Spencer Beck of Hermes Capital Group to help

9    solicit investors for a venture to build entertainment venues in malls and shopping centers.  (*See*

10   Dkt. No. 46 ¶ 15).  Plaintiffs allege that Auslander represented to Plaintiffs that he could secure

11   funding from Blackstone, an affiliate of GSP.  (*Id.* ¶ 63).  Plaintiffs executed a Term Sheet with

12   Blackstone on June 5, 2013, and a Subscription Agreement with Aulander on August 9, 2013.  (*Id.*

13   ¶¶ 23, 25).

14          On August 26, 2013, Plaintiffs were given a Proof of Funds Letter (the "Letter") by some

15   unidentified person.  (*Id.* ¶ 27).  Plaintiffs allege that the Letter they received was on JPMC

16   letterhead and purportedly from Vice President of Business Banking Defendant Pakhchaian (the

17   "Letter").  (*Id.*).  It stated that "Blackstone Resources, Inc. was a valued customer with access to

18   over $13,000,000."  (*Id.*).  Plaintiffs became fearful this and potentially other documents provided

19   by Auslander were not legitimate.  (*Id.* ¶ 37).  On October 9, 2013, Plaintiffs contacted Defendant

20   Pakhchaian regarding the Letter.  (*Id.*).  Plaintiffs allege that he denied writing the Letter and said

21   he would alert the security department.  (*Id.*).

22          The deal fell through and the venture was not successful.  (*See generally*, *id.*).  Plaintiffs

23   brought suit thereafter, alleging claims of fraud, negligent misrepresentation, promissory estoppel,

24   and respondeat superior liability.  (*Id.*).

25          Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper only when a complaint

26   exhibits either a "(1) lack of a cognizable legal theory or (2) the absence of sufficient facts alleged

27   under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

28   1988).  Under the heightened pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

2

1    (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must allege "enough facts to state a

2    claim to relief that is plausible on its face," so that the defendant receives "fair notice of what

3    the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570.  The plaintiff must

4    plead factual content that allows the court to draw the reasonable inference that the defendant is

5    liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  The court will not accept "threadbare

6    recitals of the elements of a cause of action, supported by mere conclusory statements. . . ."  *Id.*

7           Should a court dismiss certain claims in the complaint, it generally must also decide

8    whether to grant leave to amend.  "Courts are free to grant a party leave to amend whenever

9    'justice so requires,' and requests for leave should be granted with 'extreme liberality.'"  *Moss v.*

10   *United States Secret Serv*., 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R.

11   Civ. P. 15(a)(2); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  A

12   court should not deny leave to amend unless the court "determines that the pleading could not

13   possibly be cured by the allegation of other facts."  *Knappenberger v. City of Phoenix*, 566 F.3d

14   936, 942 (9th Cir. 2009) (internal quotation marks omitted; quoting Lopez v. Smith, 203 F.3d

15   1122, 1127 (9th Cir. 2000)).

16          Under California law, there are five elements to prove fraud: (1) misrepresentation, (2)

17   knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages.  *Small*

18   *v. Fritz Companies, Inc*., 65 P.3d 1255, 1258 (Cal. 2003).  Federal Rule of Civil Procedure 9(b)

19   requires that a plaintiff's allegations be specific enough to give defendants notice of the particular

20   conduct so that they can defend against the charge and not just deny that they have done anything

21   wrong.  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009).

22          "Rule 9(b) requires a plaintiff averring fraud to plead the 'who, what, when, where, and

23   how' of the alleged misconduct." *Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. App'x 696, 698 (9th

24   Cir. 2013) (quoting *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003)). "He

25   must also offer 'an explanation as to why the statement or omission complained of was false or

26   misleading.'"  *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en

27   banc), *superseded by statute on other grounds as stated in SEC v. Todd,* 642 F.3d 1207, 1216 (9th

28   Cir.2011)).

1    Under California law, the elements of negligent misrepresentation and fraud are very

2    similar.  *See Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008)

3    ("'The elements of a cause of action for fraud and a cause of action for negligent

4    misrepresentation are very similar….'") (quoting *Intrieri v. Superior Court*, 117 Cal. App. 4th 72,

5    85 (2004)).  However, negligent misrepresentation does not require the same state of mind

6    requirement.  *Id.*

7    "[F]ederal and California law on promissory estoppel are substantially identical."  *Aguilar*

8    *v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445  n.6 (9th Cir. 1992).  "To

9    establish an enforceable contract on a promissory estoppel theory, the casual workers must meet

10   five requirements. They must show (1) the existence of a promise, (2) which the promisor

11   reasonably should have expected to induce the promisee's reliance, (3) which actually induces

12   such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by

13   enforcement of the promise." *Id.* at 445, 445 n.6 (relying on *Hass v. Darigold Dairy Products,*

14   *Inc.,* 751 F.2d 1096, 1100 (9th Cir.1985) and Restatement (Second) of Contracts § 90 (1981)).

15   "Respondeat superior is not an independent cause of action; rather, it is a theory of

16   liability."  *Fidelity Nat. Title Ins. Co. v. Castle,* No. C 11–00896 SI, 2011 WL 6141310 at *15

17   (N.D.Cal. Dec.8, 2011).

18   An employer is vicariously liable for the torts of employees committed within the scope of

19   their employment.  *See, e.g., Alma W. v. Oakland Unified School Dist.,* 123 Cal.App.3d 133, 138–

20   39 (1981).  "'This includes willful and malicious torts as well as negligence.'" *John R. v. Oakland*

21   *Unified School Dist.,* 48 Cal.3d 438, 447, 769 P.2d 948, 953 (1989) (quoting *Martinez v.*

22   *Hagopian,* 182 Cal.App.3d 1223, 1227 (1986)).  \

23   In California, there is no presumption of employer liability for acts of their employees.

24   Respondeat superior is not a standalone cause of action; instead it is a theory of vicarious liability

25   which makes an employer responsible for acts of its employees.  *Fid. Nat. Title Ins. Co. v. Castle*,

26   2011 WL 6141310, at *15 (N.D. Cal. Dec. 8, 2011).  The California Supreme Court has

27   consistently narrowed the scope of employer vicarious liability, especially where intentional torts

28   are involved.  *In Lisa M. v. Henry Mayo Newhall Mem. Hosp.* (1995) 12 Cal. 4th 291, 298.

California follows the "enterprise theory" of liability:

California has adopted the rationale that the employer's liability should extend beyond his actual or possible control over the employees to include *risks inherent in or created by the enterprise* because he, rather than the innocent injured party, is best able to spread the risks through prices, rates or liability insurance.

*Liu v. Republic of China*, 892 F.2d 1419, 1427 (9th Cir. 1989) (quoting *Rodgers v. Kemper Constr. Co.,* 50 Cal.App.3d 608, 618, 124 Cal. Rptr. 143, 148 (1975)); *see also Perez v. Van Groningen & Sons,* 41 Cal.3d 962, 969 (1986) (employer liable for employee's negligence even when employee violated express company rule).

California uses a two-prong test to determine whether an employee is acting within the scope of employment. An employer will be liable for an employee's wrongful act if the act: (1) was required or incident to the employee's duties; or (2) was reasonably foreseeable to the employer.  *Liu,* 892 F.2d at 1427 (relying on *Alma W. v. Oakland Unified Sch. Dist.* 123 Cal.App.3d 133, 140 (1981)).  The determining factor is whether the risk of such an act is typical of the employer's enterprise.  *Lisa M.*, 12 Cal. 4th at 297. An employee's title is not relevant in connection with a respondeat superior analysis.

It is axiomatic that to state a cause of action for breach of a fiduciary duty, a defendant must owe a fiduciary duty to the plaintiff.  *See Marin v. Shaw*, 321 Fed. App'x 635, 635 (9th Cir. 2009) (affirming summary judgment where plaintiff "failed to raise a genuine issue as to whether [the defendant lawyer] owed him a legal or fiduciary duty).  If no such duty exists, such a claim must fail as a matter of law.  *Id.* An attorney will not be liable to non-client third parties who rely on the attorney's opinion or advice unless it can be shown the attorney intended to induce such reliance and such reliance was justifiable under the circumstances.  *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, supra 107 Cal. 4th at 75-78.  Absent an attorney-client relationship, a lawyer owes no professional duties to the person paying lawyer's fees.  *See Strasourger Pearson Tulcin, Wolff, Inc. v. Wiz Technology, Inc.*, 69 Cal. App. 4th 1399 (1999).

A court may consider the contents of key documents that are referenced in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference doctrine allows defendant to submit key documents not attached to the complaint for the court's

5

1  consideration without converting the motion to dismiss into a motion for summary judgment).

2  This is true even if the documents contradict the allegations in the body of the complaint.

3  *Thompson v. Ill.* Dept. *of Prof. Reg.* (7th Cir. 2002) 300 F.3d 750, 754 ("when a written instrument

4  contradicts the allegations in a complaint to which it is attached, the exhibit trumps the

5  allegations").

6       Defendants and Plaintiffs submitted copies of the key documents, such as the Term Sheet

7  and Subscription Agreement, in connection with the instant motions.  (*See* Dkt. No. 53, Exs. A-C;

8  Dkt. Nos. 57-59).  As these documents are clearly referenced in the FAC and no Party has

9  objected these documents or identified purported alterations, the Court considers their content in

10  deciding the instant motions.

11       Plaintiffs' fraud claims against JPMC fail as a matter of law because Plaintiffs have failed

12  to allege that JPMC made any representation that Plaintiffs could have possibly justifiably relied

13  on.  The sole proffered evidence of any such, the Letter and statements therein, were, by Plaintiffs'

14  own account, immediately and repeatedly denounced as counterfeit by JPMC.  (*See id.* ¶ 68).

15  Even if JPMC had authored the Letter, Plaintiffs have not alleged that the Letter contains any

16  statements that JPMC knew were false or even any that *are* in fact false.  The Letter merely

17  purports to state that another entity, Blackstone Resources, Inc., "was a valued customer with

18  access to over $13,000,000."  (*Id.* ¶ 64).  This is not sufficient to support a cause of action for

19  fraud against JPMC.

20       Each of Plaintiffs' remaining causes of action against JPMC requires a showing that JPMC

21  made a false misrepresentation to Plaintiffs that Plaintiffs relied on to their detriment. *See Tom*

22  *Trading, Inc. v. Better Blue, Inc.*, 26 Fed. App'x 733, 735 (9th Cir. 2002) (quoting *Lovejoy v.*

23  *At&T Corp.*, 92 Cal. App. 4th 85, 93 (2001)) (fraud); *D'Elia v. D'Elia*, 935 F.2d 273, n. 6 (9th Cir.

24  1991) (negligent misrepresentation); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966

25  F.2d 443, 445 n.6 (9th Cir. 1992) (promissory estoppel).  Plaintiffs' negligent misrepresentation,

26  promissory estoppel, and respondeat superior claims against JPMC fail for the same reasons

27  Plaintiffs' fraud claims against JPMC fail.

28       Plaintiffs assert two causes of action against Davis—fraud and negligent

1  misrepresentation.  Davis is an attorney who was hired by Auslander to perform due diligence for

2  the underlying deals.  Plaintiffs fail to allege any conversation between Davis and themselves.

3  Rather, Plaintiffs attempt to lump Davis in through allegations regarding Auslander's alleged

4  fraud.  This is impermissible.  *See Swartz v. KPMG LLP*, 476 F3d 756 (2007).  Plaintiffs fraud

5  claims against Davis fail.

6          Plaintiffs' failure to assert that Davis made any sort of false promise or representation to

7  Plaintiffs is fatal to Plaintiffs' negligent misrepresentation claim against Davis.  Plaintiffs neither

8  allege that any such false misrepresentation was made or that Davis knew the falsity of any

9  representation made.  Rather, Plaintiffs merely seem to allege that because the deal fell through

10  Davis could not have performed the due diligence he was hired by Auslander to do.  This is

11  insufficient to support a claim of negligent misrepresentation.

12          Plaintiffs' respondeat superior claims against GSP also fail.  A review of the key

13  documents in this case, such as the Term Sheet and Subscription Agreement, makes clear that

14  Plaintiffs knew or should have known that Auslander was not acting on behalf of GSP.  Indeed,

15  none of the key documents even reference GSP.  (*See* Dkt. No. 53 at Exs. A-C).  Rather,

16  Auslander signed these documents either as "Blackstone Resources" "the Managing Director of

17  Starblazer Investors, LLC" or on behalf of "NewCo."  (*Id.*).  Auslander's mere use of GSP's email

18  and premises to allegedly perpetrate fraud on Plaintiffs does not translate to liability on GSP's

19  behalf.  He did so in violation of GSP's express employee rules and regulations and it is axiomatic

20  that perpetrating fraud was not incidental to his lawful employment.  Accordingly, Plaintiffs have

21  failed to plead facts that, if taken as true, would give rise to vicarious liability on GSP's behalf.

22          Plaintiffs have failed to demonstrate GSP's involvement in the allegedly fraudulent

23  transactions, either directly or vicariously through Auslander.  Plaintiffs' fraud, negligent

24  misrepresentation, and promissory estoppel claims premised on such vicarious liability must also

25  fail.

26          Plaintiffs failed to plead that GSP made any false representations other than through

27  Auslander.  There remain no allegations regarding any misrepresentations GSP made to Plaintiffs.

28  Absent allegations of their existence, Plaintiffs could obviously not have justifiably relied on any

1   such misrepresentations.  Even if Auslander's misrepresentations were attributed to GSP,

2   Plaintiffs' reliance thereon would be completely unjustified in light of the fact that no key

3   document even mentions GSP, let alone purports to state a promise made by GSP.

4       If Plaintiffs were given leave to amend, none of the amended allegations would cure the

5   deficiencies identified above.  The only additional claim Plaintiffs seek to add is for breach of

6   fiduciary duty against Defendant Davis.  Plaintiffs have failed to allege facts establishing that

7   Davis owed them any such duty.  Amendment would be futile and Plaintiffs' request for leave to

8   do so is denied.

9       **IT IS HEREBY ORDERED** that Defendant JP Morgan Chase's Motion to Dismiss the

10  Second Amended Complaint is moot.  (Dkt. No. 67).

11      **IT IS FURTHER HEREBY ORDERED** that Plaintiffs' request for leave to amend is

12  DENIED.

13      **IT IS FURTHER HEREBY ORDERED** that Defendant JP Morgan Chase's Motion to

14  Dismiss is GRANTED.  (Dkt. No. 48).

15      **IT IS FURTHER HEREBY ORDERED** that Defendant Donald Davis' Motion to

16  Dismiss is GRANTED.  (Dkt. No. 51).

17      **IT IS FURTHER HEREBY ORDERED** that Defendant George Smith Partners' Motion

18  to Dismiss is GRANTED.  (Dkt. No. 52).

19  Dated: July 6,  2015.

20

21

22  _____

23              MANUEL L. REAL
            UNITED STATES DISTRICT JUDGE

24

25

26

27

28

8